IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr204-MEF [WO] |
| | ) | |
| KIWANIS MIYO JONES, | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Currently pending before the Court are Defendant's Motion to Suppress (Doc.

#19) and Supplemental Motion to Suppress (Doc. #21).  Defendant seeks to suppress "any

items seized during the searches of 111 Cullman Street, Montgomery, Alabama,"

including drugs and a Walther P99 model pistol.  Def.'s Mot. Suppress (Doc. #19).  Upon

consideration of the motions and the testimony at the evidentiary hearing, the undersigned

RECOMMENDS that the motions are DENIED.

**I.    BACKGROUND**

Based on the parties' briefs and testimony at the hearing held on December 3,

2007, and to a preponderance of the evidence,[1] the Court finds as follows:  In December

2006, Montgomery Police Department Detective Tinisha L. Haughton (Detective

Haughton)[2] received an anonymous complaint concerning drug activity during the day

---

[1]The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence.  United States v. Beechum, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing Lego v. Twomey, 404 U.S. 477, 489 (1972)).

[2]At the hearing, Detective Haughton testified that she has served in this position for one year.

(continued...)

and night at the residence located at 111 Cullman Street, Montgomery, Alabama (hereinafter the Cullman residence).  The following month, Detective Haughton received an anonymous tip over the telephone that several individuals were selling drugs at the Cullman residence.  Govt's Exh. 1.  Around January 18, 2007, Detective Haughton learned from an anonymous tip that when a gold Lincoln Towncar was parked in front of the Cullman residence, a lot of activity occurred there.  Detective Haughton conducted spot surveillance of the Cullman residence at differing times of the day, confirming the presence of the car.  Detective Haughton ran a search of the car's license plate and learned the car was registered to Defendant Kiwanis Miyo Jones (Jones).  Def.'s Mot. Suppress (Doc. #19) at 1.

Two days later, on January 20, 2007, Detective Haughton instructed a confidential informant (CI) working under her control and supervision to purchase a quantity of drugs from the Cullman residence.  Detective Haughton testified the CI previously had provided reliable information to other investigators in the Montgomery Police Department.  The CI made the purchase using money the detective provided.  Detective Haughton testified that while the CI made the purchase, she monitored him by cell phone using an open line which allowed the detective to listen to the purchase.  Detective Haughton also remained close by during the purchase.  Following the purchase, the CI presented an off-white rock-like substance that appeared to be crack cocaine to Detective Haughton, which she

---

[2](...continued)
She also indicated the Montgomery Police Department has employed her for four years.

identified as crack cocaine.

On January 23, 2007, the Honorable W. Troy Massey, Judge, Municipal Court of the City of Montgomery, authorized a search warrant for the Cullman residence.  Id. Detective Haughton testified she reviewed the warrant to ensure it was signed and, in her opinion and experience, that it looked like all warrants for which she previously applied. Prior to executing the search warrant, Detective Haughton instructed the CI to return to the Cullman residence to make a second controlled buy.  The individuals inside the Cullman residence refused to make the sale.

On February 1, 2007, around noon, Detective Haughton drove by the Cullman residence to confirm the Lincoln Towncar's presence, as she wanted to execute the warrant when that car was present.  During the hearing, Detective Haughton indicated she also wanted to execute the search warrant at the beginning of the month because she has learned drug dealers tend to re-supply their drug inventory to coincide with drug buyers' receiving pay checks on the first of the month.  Later in the afternoon of February 1, 2007, Detective Haughton executed the search warrant of the Cullman residence, seizing drugs and a Walther P99 model pistol from the residence's bedrooms and hallway closet. Detective Haughton testified she also found drugs on the nightstands in the bedrooms. She also seized a water and electric bill containing Jones' name.

## II.     DISCUSSION

Jones makes two arguments in support of his Motion to Suppress.  First, at the

hearing, Jones claimed that although none of the property searched and seized from the Cullman residence as well as the residence itself belong to him, he has standing to contest the search and seizure.  See Def.'s Supplemental Mot. Suppress (Doc. #21) at 1.  He claimed during the hearing he has Fourth Amendment standing as an "overnight guest" in the Cullman residence.  The Government does not challenge Jones' contention that he has Fourth Amendment standing.  See Govt's Response (Doc. #27) at 1.  Thus, the Court need not resolve this issue.  Standing, for purposes of this motion, is presumed.

Jones' second argument is that the time period between the single, controlled buy and the issuance of the search warrant rendered the warrant fatally stale.  Jones further claims that the time period between the issuance of the search and its execution added to the staleness of the information supporting the search warrant.  Def.'s Mot. Suppress (Doc. #19) at 2.  Therefore, Jones seeks suppression of the evidence found during the search of the Cullman residence on February 1, 2007.

The Government refutes the staleness argument, claiming that at the time of issuance, the information in the warrant came from a reliable CI who made a controlled buy 72-hours before the warrant issued and also from an anonymous tip.  See Govt's Response (Doc. #27) at 3-4.  The Government also maintains that the time between the issuance and execution of the search warrant did not render the information in the warrant stale because less than ten-days had passed between the two events as mandated by Federal Rule of Criminal Procedure 41(f) and Ala. Code § 15-5-12.  Govt's Response

(Doc. #27) at 4.  At the hearing, the Government added that even if the information was stale, the good faith exception applies, allowing the officer to rely upon the warrant during its execution.

### A.      Staleness Doctrine

At the evidentiary hearing, Jones admitted he did not contest the validity of the affidavit or the warrant.  In other words, Jones concedes the affidavit and search warrant are supported by sufficient facts to establish probable cause.[3]  Instead, as stated above, Jones asserts the information supporting the search warrant was stale and therefore could not establish probable cause to support issuance of the search warrant on January 23, 2007.  The issue before the Court is whether the controlled buy on January 20, 2007, was so distantly removed in time from the date the warrant issued and was executed as to render the information stale and the warrant invalid.

Probable cause is time specific:  at the time the search warrant issues, there must be cause to believe the items described in the search warrant will be at the specified location.  United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985).  Accordingly, the information supporting a search warrant cannot be stale.  United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994).  The Eleventh Circuit has defined stale search warrants as:

> warrants that, when issued, were based on information too old to create a
> sufficient probability that the items sought were still at the location to be
> searched.  In other words, the passage of time made it more likely that the

---

[3]The Court presumes that Jones' counsel inadvertently conceded the warrant was valid on its face, as the concession moots Jones' staleness argument.

circumstances upon which the warrant was issued had changed, thus
dissipating probable cause.

United States v. Santa, 236 F.3d 662, 672 n.15 (11th Cir. 2000).  Courts have held that

"the information supporting the government's application for a warrant must show that

probable cause exists at the time the warrant issues."  United States v. Bervaldi, 226 F.3d

1256, 1264 (11th Cir. 2000) (emphasis added).  "There is no particular rule or time limit

for when information becomes stale."  Id. at 1265.  Rather, "staleness is an issue which

must be decided on the peculiar facts of each case."  United States v. Bascaro, 742 F.2d

1335, 1345 (11th Cir. 1984) (quoting United States v. Hyde, 574 F.2d 856, 865 (11th Cir.

1978)).

There are factors, however, which should serve as guidance in this area:

In addition to the length of time, courts should consider the 'nature of the
suspected crime (discrete crimes or ongoing conspiracy), habits of the
accused, character of the items sought, and nature and function of the
premises to be searched.'  For example, the former Fifth Circuit held that
four-month-old reports of projectiles in the walls and floors of a dwelling as
a result of the test-firing of the murder weapon were not stale because the
'floors and walls of a house are relatively permanent fixtures and would not
likely be subject to removal over the period of four months.

Bervaldi, 226 F.3d at 1264 (internal citations and footnotes omitted).  In considering the

nature of the crime, the Courts have "distinguished between criminal activity which is

protracted and continuous and that which is isolated."  Id.  For instance, "where an

affidavit recites a mere isolated violation then it is not unreasonable to believe that

probable cause quickly dwindles with the passage of time.  On the other hand, if an

affidavit recites activity indicating protracted or continuous conduct, time is of less significance." Id. (quoting Bascaro, 742 F.2d at 1345-46) (quoting Bastida v. Henderson, 487 F.2d 860, 864 (5th Cir. 1973))).

Turning to the evidence before the Court, the affidavit in question outlines the controlled buy made by the CI on January 20, 2007, 72 hours prior to the search warrant's issuance. In addition, the affidavit also states that during January 2007, Detective Haughton received information from an anonymous source providing that several subjects were selling drugs from the Cullman residence. Govt's Exh. 1. While these facts do not set forth any indication the Cullman residence was part of a large-scale drug trafficking operation, they give reason to suspect that at the time of the controlled buy the Cullman residence was a location used for the sale of drugs. "By its nature, drug-dealing is an ongoing activity, not an isolated occurrence." United States v. William, 177 Fed. Appx. 914, 918 (11th Cir. 2006). Thus, "[i]t is reasonable to infer that the use of a house for the sale of drugs will continue over some period of time." Id. (internal citations and quotations omitted). The 72-hours between the controlled buy and the issuance of the warrant is not so distant in time to undermine this inference. The Court therefore finds this short period of time between the controlled buy and the issuance of the warrant did not render the information in the affidavit stale at the time the warrant issued, as there was a sufficient probability that the items were still at the location to be searched. See United States v. Whiddon, 146 Fed. Appx. 352, 355 (11th Cir. 2005) (finding probable

7

cause where, among other facts, the single controlled buy from defendant occurred within 72 hours of the swearing of the affidavit); see United States v. Wright, 811 F. Supp. 1576, 1581 (S. D. Ga. 1993) (finding no staleness argument were the affidavit in support of the search warrant described, among other things, a controlled buy of narcotics 48-hours before issuance).

The Court also finds that the information in the warrant was not stale at the time of execution on February 1, 2007.  As the Government argues, only nine days had passed since the warrant's issuance.  This time period is lawful under Federal Rule of Criminal Procedure 41(e) and Ala. Code § 15-5-12, both which require execution of the warrant within ten days.  See also United States v. Walthour, 202 Fed. Appx. 367, 370 (11th Cir. 2006) (finding the information in the search warrant was not rendered stale where nine days had passed between the issuance and execution of the warrant).

## B.    The Leon Good Faith Exception

Assuming *arguendo* that the search warrant was not supported by probable cause, the Leon good faith exception to the Exclusionary Rule applies in this case.  United States v. Leon, 468 U.S. 897 (1984), stands for the principle that "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002); see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003).  There are only four situations where

8

<u>Leon</u>'s good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient- *i.e.,* in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

There is no indication that these four situations occurred in this case.  Jones conceded this much at the hearing.  Instead, Detective Haughton acted with an objective good faith belief that the warrant was properly issued by a neutral magistrate.  <u>See</u> <u>United States v. Leon,</u> 468 U.S. 897, 920-24 (1984).  Accordingly, the good faith exception precludes suppression of the evidence.

## III.  CONCLUSION

The information in the search warrant affidavit was sufficient to establish probable cause that evidence would be found at the Cullman residence at the time the search warrant was issued.  Detective Haughton also acted in good faith.  Therefore, it is the RECOMMENDATION of the Magistrate Judge that Jones' Motion and Supplemental Motion to Suppress (Doc. #19, #21) be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before December 20, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.

9

Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 7th day of December, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE